UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMALGAMATED TRANSIT UNION ET AL. | CIVIL ACTION |
| VERSUS | No. 21-1790 |
| NEW ORLEANS REGIONAL TRANSIT AUTHORITY ET AL. | SECTION I |

### ORDER & REASONS

Before the Court is a motion[1] to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, to stay proceedings pending arbitration, filed by Regional Transit Authority of New Orleans ("RTA") and Alex Wiggins ("Wiggins") (collectively, "defendants"). Valerie Jefferson ("Jefferson") and Amalgamated Transit Union ("ATU") (collectively, "plaintiffs") oppose[2] the motion. Defendants filed replies[3] in support of their motion.

In their memoranda, all parties made extensive reference to a collective bargaining agreement ("CBA"),[4] which was attached to the motion to dismiss, but which was not referenced in, nor attached to, plaintiff's complaint. Accordingly, on April 20, 2022, the Court advised the parties that, pursuant to Rule 12(d), the motion would be converted into a motion for summary judgment, limited to the issue of arbitrability.[5] The Court also provided the parties with an opportunity to file any

---

[1] R. Doc. No. 10.
[2] R. Doc. No. 17.
[3] R. Doc. Nos. 20, 23.
[4] R. Doc. No. 10-3.
[5] R. Doc. No. 25. Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court,

additional materials relevant to the resolution of the motion.[6] The parties declined to submit additional materials.[7]

For the reasons that follow, the Court will deny the motion.

## I. BACKGROUND

The facts of the instant action, as alleged in the complaint, are as follows.[8] Wiggins is the chief executive officer of RTA, which is a public transit authority.[9] ATU is a labor union that represents individuals employed by RTA.[10] Jefferson was an employee of RTA until she was terminated in September 2021.[11] She was elected president of ATU Local 1560 in 2019 and continues to hold that office.[12] As the chief officer and business agent of ATU Local 1560, Jefferson advocates for "better wages, hours, and working conditions" on behalf of the ATU members who work for RTA.[13]

---

the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See also, e.g.*, *4D Life LLC v. Barrington Packaging Sys. Grp., Inc.*, No. 20-1458, 2021 WL 134530, at *2 (E.D. La. Jan. 14, 2021) (Vance, J.) (converting Rule 12(b)(6) motion, which raised the issue of arbitrability, into a motion for summary judgment, pursuant to Rule 12(d)); *VP, LLC v. Newmar Corp.*, No. 11-2813, 2012 WL 6201828, at *3 (E.D. La. Dec. 12, 2012) (Morgan, J.) (same).

[6] R. Doc. No. 25.

[7] R. Doc. Nos. 26, 27.

[8] To the extent that this section recounts the complaint's factual allegations pertaining to issues other than arbitrability, it does so for the sole purpose of providing the reader with general background information. Whether the plaintiffs' factual allegations pertaining to issues other than arbitrability are true is a matter to be addressed in subsequent motions for summary judgment or at trial.

[9] R. Doc. No. 1 ¶¶ 4–5.

[10] *Id.* ¶ 2.

[11] *Id.*

[12] *Id.* ¶ 9.

[13] *Id.* ¶¶ 11–12.

Plaintiffs allege that Jefferson has engaged in public speech and association critical of RTA, including throughout 2021.[14]

On September 8, 2021, Jefferson was acting in her capacity as union representative when she learned that RTA was apparently refusing to comply with a recent agreement regarding emergency pay.[15] She went to Wiggins' office to inquire about the issue.[16] Wiggins confirmed that an individual who had been involved in negotiating the emergency pay agreement had been fired.[17] Jefferson understood this to be an indication that RTA intended to renege on the emergency pay agreement.[18] Jefferson exited Wiggins' office, stating, "Well, I know what kind of person I'm dealing with. It's on. I need to talk with my executive board."[19]

Less than an hour after this interaction, Jefferson was presented with a notice stating that she was being terminated because she allegedly told Wiggins, "[i]t's on now bitch," in a "threatening manner."[20] Plaintiffs claim that this termination was retaliation for her protected speech and association, in violation of 42 U.S.C. § 1983.[21] Plaintiffs further assert that defendants have caused irreparable injury to Jefferson, in that the firing of Jefferson is intended to have a chilling effect on her advocacy on

---

[14] *Id.* ¶ 14–16.
[15] *Id.* ¶¶ 31–48.
[16] *Id.* ¶ 43.
[17] *Id.* ¶¶ 38–45.
[18] *Id.* ¶ 46.
[19] *Id.* ¶¶ 46–47.
[20] *Id.* ¶¶ 49–55.
[21] *Id.* ¶ 77.

3

behalf of ATU members, in furtherance of their voluntary association.[22] In addition, plaintiffs claim that defendants' actions violated the First Amendment rights of ATU Local 1560 and its members.[23]

Defendants assert that, pursuant to the CBA between ATU Local 1560 and RTA,[24] all of plaintiffs' claims are subject to mandatory grievance procedures and arbitration.[25] As such, defendants submit that the Court must dismiss plaintiffs' claims or, alternatively, stay these proceedings pending arbitration.[26] Plaintiffs respond that Supreme Court and Fifth Circuit precedent dictates that plaintiffs must be permitted to bring their claims in federal court because the CBA does not clearly and unmistakably state that § 1983 claims must be submitted to arbitration.[27]

## II. STANDARD OF LAW

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment in favor of the moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In determining whether there is a genuine dispute of material fact, the court may review the pleadings, the discovery and disclosure materials on file, and any submitted affidavits. *See* Fed. R. Civ. P. 56.

---

[22] *Id.* ¶ 78.
[23] *Id.* ¶ 77.
[24] The CBA is between ATU Local 1560 and Transdev Transportation Services. R. Doc. No. 10-3, at 1. Defendants state, and plaintiffs do not contest, that RTA is the successor entity to Transdev Transportation Services. R. Doc. No. 10-1, at 10 n.17.
[25] R. Doc. No. 10-1, at 1–2.
[26] *Id.* at 2.
[27] R. Doc. No. 17, at 2–6.

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), governs the enforceability of arbitration agreements in federal court.[28] "The Act provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Specifically, Section 3 provides:

> If any suit or proceeding be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]

9 U.S.C. § 3.

### III. LAW AND ANALYSIS

No dispute of material fact exists for the purpose of the instant motion: both parties agree that the CBA between RTA and ATU Local 1560 is a valid agreement. Thus, the Court must determine whether defendants have established that they are entitled to summary judgment as a matter of law.

---

[28] As defendants note, R. Doc. No. 10-1, at 8, "Louisiana courts look to federal law in interpreting the Louisiana Arbitration Law because it is virtually identical to the United States Arbitration Act[.]" *Badgerow v. Walters*, 975 F.3d 469, 472 n.2 (5th Cir. 2020), *rev'd on other grounds*, --- S.Ct. ---, 2022 WL 959675 (2022) (quoting *Chevron Phillips Chem. Co., LP v. Sulzer Chemtech USA, Inc.*, 831 So. 2d 474, 476 (La. App. 2002)). Accordingly, to the extent that the Louisiana Binding Arbitration Law ("LBAL"), La. R.S. 9:4201–4217, applies in the instant matter, "determinations regarding the viability and scope of arbitration clauses would be the same under either [LBAL or the FAA]." *Lafleur v. L. Offs. of Anthony G. Buzbee, P.C.*, 960 So. 2d 105, 111 (La. App. 1 Cir. Mar. 23, 2007).

"Arbitration is strictly 'a matter of consent,' and thus 'is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.'" *Gallagher v. Vokey*, 860 F. App'x 354, 356 (5th Cir. 2021) (emphasis in original) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)). The Fifth Circuit conducts a two-step inquiry when determining whether claims are referable to arbitration. First, "the court must determine whether the parties agreed to arbitrate the dispute." *Polyflow, LLC v. Specialty RTP, LLC*, 993 F.3d 295, 302 (5th Cir. 2021) (quoting *Will-Drill Res. v. Samson Res.*, 352 F.3d 211, 214 (5th Cir. 2003)). This inquiry entails two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* Second, if the court finds that the parties agreed to arbitrate, the court "must consider whether any federal statute or policy renders the claims nonarbitrable." *Id.*[29]

Federal law governs the interpretation of collective bargaining agreements. *Savant v. APM Terminals*, 776 F.3d 285, 289 (5th Cir. 2014) (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Masonite Corp.*, 122 F.3d 228, 231 (5th Cir. 1997); *Textile Workers Union v. Lincoln Mills of Ala.*, 353 U.S. 448, 456–57 (1957)). Nevertheless, "courts may draw upon state rules of contractual

---

[29] The Fifth Circuit applies this arbitrability inquiry in several procedural postures, including when considering motions to compel arbitration or to stay proceedings pending arbitration. *See, e.g., Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236–37 (5th Cir. 2013); *Gallagher*, 860 F. App'x at 356. Thus, the Court's analysis as to defendants' request for a stay of proceedings is functionally the same as its summary judgment analysis.

interpretation to the extent that those rules are consistent with federal labor policies." *Id.* (quoting *Nichols v. Alcatel USA, Inc.,* 532 F.3d 364, 377 (5th Cir. 2008)).

Plaintiffs do not dispute that the CBA constitutes a valid agreement to arbitrate. Instead, they argue that the CBA does not require Jefferson to submit her § 1983 claims to mandatory arbitration, citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009).[30] In other words, they argue that Jefferson's claims do not fall within the scope of the CBA's grievance and arbitration requirements. Defendants do not address *Penn Plaza* in their memorandum in support of the motion, nor in their reply.

"In *14 Penn Plaza LLC v. Pyett,* the Supreme Court clarified that, in the absence of statutory language to the contrary, a union may agree with an employer to submit employees' statutory claims exclusively to arbitration or another non-judicial grievance procedure." *Savant*, 776 F.3d at 288 (citing *Penn Plaza*, 556 U.S. at 256–58). "For that agreement to be enforceable, however, the CBA must 'clearly and unmistakably require[ ] union members to arbitrate.'" *Id.* (quoting *Penn Plaza*, 556 U.S. at 274). The Fifth Circuit, in applying *Penn Plaza*, has held that, "for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims." *Id.* at 288–89 (5th Cir. 2014) (quoting *Ibarra v. United Parcel Serv.,* 695 F.3d 354, 359–60 (5th Cir. 2012)).

---

[30] R. Doc. No. 17, at 4.

Additionally, *Penn Plaza* instructs that a CBA provision which exclusively submits statutory claims to arbitration must be enforced "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" 556 U.S. at 258 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).

The CBA between ATU Local 1560 and RTA sets forth the processes by which disputes between the RTA and its covered employees are to be resolved and reserves certain rights and protections to the parties. The CBA provides that RTA has the right "to reprimand, discharge or otherwise discipline employees for just cause."[31] It further provides that "any dispute arising from the interpretation or application of this Agreement or any dispute between the company and an employee or the union as to whether an employee has been disciplined, suspended, or discharged for just cause" must be submitted to an internal grievance procedure and, if not resolved through said procedure, to arbitration.[32] The CBA also states that "[d]ischarges shall be subject to arbitration."[33] The CBA makes no reference to statutory rights generally, nor to claims brought pursuant to 42 U.S.C. § 1983 in particular.

The Fifth Circuit considered a similar provision in *Savant*, in which an employee had commenced an action in federal court raising claims pursuant to the Age Discrimination in Employment Act ("ADEA"). 776 F.3d at 287. The relevant provision stated:

---

[31] R. Doc. No. 10-3, at 5.
[32] R. Doc. No. 10-3, at 9–12.
[33] R. Doc. No. 10-3, at 11.

8

> This grievance procedure and arbitration shall be the exclusive remedy with respect to any and all disputes arising between the Union or any person working under the Agreement . . . and . . . any company acting under the Agreement . . . and no other remedies shall be utilized[.]

*Id.* at 289. The Fifth Circuit concluded that the CBA was "not clear and unmistakable," because it "[did] not specifically identify the ADEA, and it [did] not state that statutory discrimination claims are subject to its grievance and arbitration procedures." *Id.* Thus, the CBA could not bar the plaintiff from filing suit pursuant to the ADEA. *Id.*[34]

Accordingly, the Court concludes that the CBA in this action does not clearly and unmistakably require union members to arbitrate § 1983 claims. Thus, plaintiffs' claims do not fall within the scope of the grievance and arbitration procedures mandated by the CBA.[35]

---

[34] By contrast, the Fifth Circuit concluded that the memorandum of understanding in the same case was "clear and unmistakable," where the memorandum stated that "[a]ny complaint that there has been a violation of any employment law, such as . . . [the] ADEA . . . shall be resolved solely by the grievance and arbitration provisions of the collective bargaining agreement" and that the specified procedure "shall be a worker's sole remedy for a violation of any antidiscrimination or employment law." *Savant*, 776 F.3d at 289.

[35] The Court's conclusion as to *Penn Plaza*'s first inquiry is dispositive. Therefore, the Court need not reach the second inquiry, which looks to whether Congress, in enacting § 1983, evinced an intention to preclude waiver of access to a federal judicial forum in this specific context. It appears that neither the Supreme Court nor the Fifth Circuit has addressed this question with respect to mandatory arbitration. Defendants state only that "Congress has not evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue [in this action]," without providing any authority in support of this proposition. R. Doc. No. 10-1, at 14. However, plaintiffs suggest that the Supreme Court's reasoning regarding other § 1983-related issues indicates that courts should be hesitant, at the very least, to delay or deny a plaintiff's ability to raise § 1983 claims in federal court. For instance, the Court has long held that exhaustion of state administrative remedies is not a prerequisite to bringing an action pursuant to § 1983. *Patsy v. Bd. of Regents*, 457

Defendants do not address *Penn Plaza* and related Fifth Circuit caselaw in their motion. Instead, the central thrust of defendants' argument appears to be that "the dispute at issue in this lawsuit (whether Ms. Jefferson's employment was terminated with 'just cause') is the exact same dispute at issue in Plaintiffs' grievances, which are subject to mandatory arbitration."[36] Further, defendants submit that "[t]he entirety of Plaintiffs' claims in this action arose out of the RTA's termination of Ms. Jefferson's employment . . . which the CBA mandates 'shall be subject to arbitration.'"[37]

"The distinctly separate nature of [ ] contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." *Ibarra*, 695 F.3d at 358 n.23 (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 50 (1974)). Thus, "when an arbitration agreement commits claims or disputes to arbitration that are *similar* to or even substantially duplicative of the rights secured under a statute or constitution, the arbitration agreement does not eliminate the plaintiff's right to seek judicial relief for violations of those statutory or constitutional rights, even if parallel with an arbitration claim." *Edinburg United Police Officers*

---

U.S. 496, 516 (1982). In so holding, the Court has emphasized that, in enacting § 1983, "Congress intended . . . to throw open the doors of the United States courts to individuals who . . . who had suffered[] the deprivation of constitutional rights . . . and to provide these individuals *immediate access* to the federal courts[.]" *Id.* at 504 (emphasis added) (quotation omitted).

[36] R. Doc. No. 10-1, at 5.

[37] *Id.* Defendants cite to *Amalgamated Transit Union Local 1546 v. Capital Area Transit System*, No. 20-888, 2021 WL 5578040 (M.D. La. Nov. 29, 2021), for additional support for this argument. R. Doc. No. 20, at 1–3. However, because the court in *Amalgamated Transit Union Local 1546* did not address *Penn Plaza* and related caselaw, the case does little to enhance defendants' argument.

*Ass'n v. City of Edinburg*, No. 20-137, 2020 WL 5642197, at *4 (S.D. Tex. Sept. 22, 2020) (citing *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1205–06 (10th Cir. 2011)) (emphasis in original).[38]

Defendants' argument, if accepted, would allow defendants to circumvent *Penn Plaza*'s holding that statutory claims may only be subjected to mandatory arbitration if the CBA "clearly and unmistakably" provides as much. After all, the types of statutory claims that fall within *Penn Plaza*'s holding tend to arise from factual scenarios that could also form the basis for workplace disciplinary and grievance procedures.

If employers were permitted to obtain a stay or dismissal of an employee's discrimination action in federal court by simply reframing the dispute as regarding whether the employee was disciplined for "just cause," or by asserting that the action factually overlapped with matters that could otherwise be subject to arbitration, then *Penn Plaza*'s "clear and unmistakable" requirement would be rendered toothless.

## IV. CONCLUSION

Defendants have failed to establish that they are entitled to summary judgment. For the same reasons, defendants have failed to establish that a stay of these proceedings, pending arbitration, is warranted. *See supra* n.29. Accordingly,

---

[38] The Court notes that defendants' assertion that "the relief Plaintiffs seek in this lawsuit (reinstatement of Ms. Jefferson's employment and back pay) is the exact same relief Plaintiffs sought in their grievances," R. Doc. No. 10-1, at 5, is inaccurate. Plaintiffs have also asked the Court, among other things, to "[e]njoin defendants from further retaliating against Jefferson or any other member of Local 1560 for protected speech and association." R. Doc. No. 1, at 10. Defendants have not explained how this type of requested relief, among others, could be obtained through arbitration.

**IT IS ORDERED** that the motion for summary judgment or, in the alternative, for a stay of proceedings pending arbitration, is **DENIED**.

New Orleans, Louisiana, April 27, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**