# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**AMALGAMATED TRANSIT UNION ET AL.**                    **CIVIL ACTION**

**VERSUS**                                             **No. 21-1790**

**NEW ORLEANS REGIONAL**                               **SECTION I**
**TRANSIT AUTHORITY ET AL.**

## ORDER & REASONS

Before the Court is a motion[1] for summary judgment by defendants New

Orleans Regional Transit Authority ("RTA") and Alex Wiggins ("Wiggins"). Plaintiffs

Amalgamated Transit Union ("ATU") and Valerie Jefferson ("Jefferson") oppose the

motion.[2] For the reasons that follow, the Court grants the motion.

## I.    BACKGROUND

The Court exhaustively recounted the facts giving rise to this matter in its

order and reasons denying the parties' cross-motions for summary judgment,[3] and it

therefore does so only briefly here.

Jefferson was fired from her job as a bus driver for RTA on September 8, 2021.[4]

In addition to being a bus driver, Jefferson was the president of her local chapter of

---

[1] R. Doc. No. 91.
[2] R. Doc. No. 95.
[3] R. Doc. No. 71.
[4] R. Doc. No. 95-2, ¶¶ 1, 2, 4.

1

the ATU.[5]  Defendants assert that Jefferson was fired because, after asking about the RTA's termination of its deputy chief operations officer, Thomas Stringer ("Stringer"), a non-union member, she said, "it's on now, bitch" or "it is on bitch," to Wiggins, RTA's CEO.[6]  The conversation between Jefferson and Wiggins was witnessed by only one other person, RTA chief human resources officer Darwyn Anderson ("Anderson").[7]

Plaintiffs argue that Jefferson initiated the conversation at issue due to her concern that the firing of Stringer indicated that the RTA planned to renege on a recently negotiated hazard pay deal,[8] and that Jefferson did not use profanity.[9] Plaintiffs assert that Jefferson said "it's on now, I need to contact the [union] executive board."[10] Jefferson asserts that, by firing her, defendants violated her First Amendment rights to free speech and free association.[11]

As noted, the Court previously denied cross-motions for summary judgment, determining that the parties' differing accounts as to what Jefferson said during the relevant conversation constituted a genuine dispute of material fact precluding summary judgment as to both the speech and association claims.[12] The Court also

---

[5]  *Id.* ¶ 3.
[6]  R. Doc. No. 91-2, ¶¶ 5, 10–13.
[7]  R. Doc. No. 95-2, ¶ 13.
[8]  *Id.* ¶¶ 10–12.
[9]  *Id.* ¶ 13.
[10]  *Id.*
[11]  *See generally* R. Doc. No. 1.
[12]  R. Doc. No. 71, at 16–17.

noted that defendants, in their motion and response to plaintiffs' motion, had not specifically addressed plaintiffs' freedom of association claim.[13]

After continuing the trial date, the Court granted defendants leave to file a motion for summary judgment addressing the issues of qualified immunity and municipal liability, as well as plaintiffs' substantive First Amendment claims.[14] In the motion currently before the Court, defendants argue that Wiggins is entitled to qualified immunity, that Wiggins' decision to fire Jefferson does not give rise to municipal liability, and that both the speech and association claims fail on the merits, regardless of the dispute over what Jefferson said.

## II.    STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence

---

[13] *Id.* at 16.

[14] R. Doc. No. 86. Defendants did not brief qualified immunity or municipal liability in their initial summary judgment motion, but implicitly raised the issues in their proposed jury instructions. R. Doc. No. 81, at 1 ("Could a reasonable officer have believed that the termination of Valerie Jefferson was lawful? . . . "Did a policy or custom of the RTA violate Valerie Jefferson's constitutional right to free speech?").

negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

## III.   ANALYSIS

As an initial matter, the Court notes that its previous order denying summary judgment does not preclude granting the instant motion. "An order denying summary judgment is interlocutory, and leaves the trial court free to 'reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by Little*, 37 F.3d 1069).

### a.  Freedom of Speech

A government agency "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006) (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983)). "[T]he First Amendment nonetheless permits government employers to exercise a degree of control over their employees' words and actions." *Hardesty v. Cochran*, 621 F. App'x 771, 775 (5th Cir. 2015) (citations omitted).

To succeed on a First Amendment free speech retaliation claim pursuant to § 1983, the plaintiff must show that (1) she suffered an adverse employment action, (2) she spoke as a citizen on a matter of public concern, (3) her interest in speaking outweighs the government's interest in the efficient provision of public services, and (4) the protected speech motivated the adverse employment action. *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (citing *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)). The parties disagree as to whether plaintiffs can establish the second and third elements.[15]

The second element requires the Court to make two separate determinations: first, whether Jefferson was speaking as a private citizen; and second, whether she spoke on a matter of public concern. Regarding the first prong of this element, the Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. "Official duties" are tasks that employees are "employed to do." *Id.* The inquiry of whether an employee speaks pursuant to their official duties "is a practical one." *Gibson v. Kilpatrick*, 773 F.3d 661, 670 (5th Cir. 2014) (quoting *Garcetti*, 547 U.S. at 424). The fact that an employee speaks inside their office, rather than publicly, or that the subject matter of speech

---

[15] The first and fourth factors are not disputed. The parties agree that Jefferson suffered an adverse employment action, as she was fired. They also agree that Jefferson was fired because of her speech, though they dispute whether what she said was entitled to First Amendment protection.

relates to their employment, does not necessarily mean that the speech was pursuant to their official duties. *Garcetti*, 547 U.S. at 420−21. The "critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

When considering the second prong of this analysis—whether the employee's speech addresses a matter of public concern—the court "consider[s] the speech for which the employee was disciplined . . . *not* some other speech." *Commc'ns Workers of Am. v. Ector Cnty. Hosp. Dist.*, 467 F.3d 427, 437 (5th Cir. 2006) (en banc) (emphasis in original) (citing *Waters v. Churchill*, 511 U.S. 661, 679 (1994)). Speech relates to a matter of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Moody v. Walker*, No. 20-2656, 2021 WL 3423597, at *11 (E.D. La. Aug. 5, 2021) (Vitter, J.) (quoting *Lane*, 573 U.S. at 241) (internal quotations omitted).

In determining whether employee speech is on a matter of public concern, courts consider the "content, form, and context" of the speech. *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008) (quoting *Connick*, 461 U.S. at 147−48). The speaker's motive "may be considered," but it is not "a determinative factor." *Davis v. Ector Cnty., Tex.*, 40 F.3d 777, 782 (5th Cir. 1994). "The content of speech concerns a matter

of public concern '[i]f releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance . . . .'" *Dumas v. St. Tammany Parish Fire Dist. No. 3*, 17-1025, 2017 WL 1969641, at *6 (E.D. La. May 12, 2017) (quoting *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001)). "Whether the speech at issue is on a matter of public concern is a question of law that must be determined by the court." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005) (citing *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994)).

The third element of a free-speech retaliation claim—the balancing of the government's and the employee's interests— requires the Court to "balance the individual and societal interests that are served when employees speak as citizens on matters of public concern with the needs of government employers attempting to perform their important public functions." *Collins v. Gusman*, No. 14-234, 2015 WL 1468298, at *4 (E.D. La. Mar. 30, 2015) (Vance, J.) (quoting *Garcetti*, 547 U.S. at 420) (internal quotations omitted). This balancing is sometimes referred to as "*Pickering* balancing." *E.g.*, *Salge*, 411 F.3d at 184 (referring to *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)). Relevant considerations include:

> (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers.

8

*Grogan v. Lange*, 617 F. App'x 288, 292 (5th Cir. 2015) (per curiam) (unpublished) (quoting *Connick*, 461 U.S. at 151–53). This balancing is also a question of law to be determined by the court. *Davis v. Allen Parish Serv. Dist.*, 210 F. App'x 404, 408 (5th Cir. 2006) (citing *Salge*, 411 F.3d at 184).

"The Supreme Court has recognized that [when] applying this test, a dispute sometimes arises as to 'the factual basis for applying the test,' that is, 'what the speech was, in what tone it was delivered, [and] what the listener's reactions were.'" *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 470 (5th Cir. 2014) (quoting *Waters v. Churchill*, 511 U.S. 661, 668 (1994) (plurality opinion)). In such circumstances, "the *Waters* Court instructed lower courts to take a deferential approach: when an employer's decision rests on a reasonable belief about the contents of the speech, formed after an objectively reasonable investigation of the facts to determine what the employee actually said, then the court should not second-guess the employer's decision, even if the employer was wrong and the speech was entitled to protection." *Id.* (citing *Waters*, 511 U.S. at 677–78).[16]

The Fifth Circuit has held that "[g]enerally, without at least asking an employee what she said, an employer's indispensable investigation into whether an

---

[16] Though *Waters* was a plurality opinion, a majority of the Supreme Court reaffirmed its holding in *Heffernan v. City of Paterson*, which held that, when an employer incorrectly believes that an employee engaged in activity protected by the First Amendment, and terminates the employee on the basis of that factually incorrect belief, "the employee is entitled to challenge that unlawful action under the First Amendment." 578 U.S. 266, 273 (2016) ("We conclude that, as in *Waters*, the government's reason for demoting Heffernan is what counts here.").

employee's speech was protected will not be reasonable." *Salge*, 411 F.3d at 193. In *Waters*, "the investigation approved by the Supreme Court comprised the employer (1) thrice interviewing the employee who originally complained about [the employee's] speech, (2) questioning another employee who had witnessed the conversation for corroboration, and (3) most significantly, conversing with the employee whose speech was at issue." *Id.* (citing *Waters*, 511 U.S. at 666). In *Johnson v. Louisiana*, the Fifth Circuit found that an investigation was reasonable where the employer "received statements from three employees, [ ] obtained a supervisor's report stating that the supervisor believed the plaintiff was lying, and [ ] the plaintiff failed to present any evidence in his own support when explicitly invited to do so." *Id.* at 194 (citing *Johnson v. Louisiana*, 369 F.3d 826, 832 (5th Cir. 2004)) (emphasis omitted). "In sum, [the Fifth Circuit] has made clear that reasonableness depends in part on an investigation's thoroughness and typically results from some formal process for reviewing evidence and weighing disputed claims." *Cutler*, 767 F.3d at 474.

Defendants argue that, pursuant to *Waters* and *Heffernan*, the factual disputes as to what Jefferson said in the conversation with Wiggins cannot provide a basis for denying summary judgment.[17] This is so, they argue, because the RTA conducted a reasonable investigation of Jefferson's speech before firing her. In support of this argument, they point out that Wiggins, the relevant decisionmaker, had firsthand

---

[17] R. Doc. No. 91-1, at 10. Defendants did not raise this argument in their initial summary judgment motion. *See generally* R. Doc. No. 52.

knowledge of the interaction; that his account was corroborated by Anderson's account, as both reported hearing Jefferson say "bitch"; and that Jefferson initiated a union grievance process regarding her termination.[18] Defendants also argue there is no evidence that Wiggins' account of the facts is pretextual.[19] Significantly, plaintiffs do not dispute the applicability of *Waters* and *Heffernan*; indeed, they make no response to the argument whatsoever.

Both Wiggins and Anderson reported that, in the interaction at issue, Jefferson asked about Stringer's termination, and then used the word "bitch."[20] By plaintiffs' own account, Jefferson "was asked to give an account of her interaction with Mr. Wiggins" during the meeting in which she was presented with a termination notice.[21] Plaintiffs also do not dispute that Jefferson initiated a union grievance process regarding her termination.[22] Like the employers in *Waters* and *Johnson*, the RTA relied on firsthand accounts of the interaction and provided Jefferson with an opportunity to rebut those accounts. *Waters*, 511 U.S. at 666; *Johnson*, 369 F.3d at

---

[18] R. Doc. No. 91-1, at 12–13.

[19] *Id.* at 13.

[20] R. Doc. No. 91-4, at 13:11–:16; R. Doc. No. 91-6, at 32:11–:12. Emails sent by Wiggins and Anderson on the day of Jefferson's termination also state that she used the word "bitch." R. Doc. Nos. 91-7, 91-8. Plaintiffs have contended that Jefferson also referenced the executive board in this conversation. Neither Wiggins' nor Anderson's accounts state that any such reference was made.

[21] R. Doc. No. 55-4, at 96:14–:16 (Jefferson's deposition testimony stating that someone in the meeting "told [her] to tell [her] side of the story").

[22] R. Doc. No. 95-2, ¶ 18. Plaintiffs take issue with defendants' statement that Jefferson "went through" a union grievance process, but do not dispute that she "initiated" one. *Id.*

832. Faced with disputed facts, the RTA made a decision to defer to the account of Wiggins and Anderson over that of Jefferson. *Gonzales v. Dallas Cnty., Tex.*, 249 F.3d 406, 412 (5th Cir. 2001) ("[W]e do not require government employers to make personnel decisions through methods that mirror court procedures, nor do we necessarily require employers always to resolve contradictory testimony in favor of the employee."). As previously stated, Jefferson also pursued, via the union grievance process, a formal process for reviewing her termination.[23] *Cutler*, 767 F.3d at 474.

Plaintiffs have not pointed to any evidence or explained how these undisputed facts show that the RTA's investigation was unreasonable within the meaning of *Waters*, nor that Wiggins' account was pretextual.[24] *Compare Jenkins v. Green*, 70 F.3d 1266, 1995 WL 696683, at *8 (5th Cir. Oct. 17, 1995) (unpublished) (factual issues as to the reasonableness of employer's investigation precluded summary judgment). Accordingly, the Court "take[s] a deferential approach" and does "not

---

[23] Neither party's briefing states what came of this grievance process.

[24] The Court notes that the cases delineating what constitutes a reasonable investigation, discussed above, are factually distinct from the instant matter because, in those cases, the relevant decisionmaker was not a firsthand observer of the relevant conduct. The reasonable investigation requirement therefore operated to allow "government employers, like other employers, [to] rely on hearsay and personal credibility determinations in deciding what was actually said." *Johnson*, 369 F.3d at 832. However, the Court finds that these cases can still guide its analysis, as the RTA's decision in this matter was based on the accounts of Wiggins and Anderson and its determination that those accounts were more credible than Jefferson's.

second-guess the employer's decision [as to what was said], even if the employer was wrong and the speech was entitled to protection." *Cutler*, 767 F.3d at 470.[25]

As stated, the Court must now determine whether Jefferson spoke as a citizen on a matter of public concern. For purposes of this discussion, the Court will assume that Jefferson spoke as a citizen. However, because the facts as understood by Wiggins show that Jefferson did not speak on a matter of public concern, plaintiffs' claims fail.

"Internal personnel disputes and management decisions are rarely a matter of public concern." *Gibson v. Kilpatrick*, 838 F.3d 476, 485 (5th Cir. 2016) (quoting *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 827 (5th Cir. 2007)). Inquiring about the termination of Stringer, a single non-union employee, is indicative of a personal disagreement with management's personnel decisions, and does not suggest that the content of Jefferson's speech touched on a matter of public concern. The only indication that defendants had that Jefferson intended to discuss union-related matters (and therefore was potentially implicating matters of public concern) was that, when she interacted with Wiggins, it was typically in her capacity as a union representative.[26] Plaintiffs emphasize that Jefferson subjectively believed herself to be acting as a union representative. Again, though, plaintiffs do not argue that

---

[25] The Court notes that, using this standard, it need not decide whose account of the interaction was correct as a factual matter. In other words, it need not decide whether Jefferson actually used the word "bitch" or referenced the executive board.
[26] *E.g.*, R. Doc. No. 95, at 7.

defendants' belief that Jefferson's speech was unrelated to her union duties was based on an unreasonable investigation.[27]

As noted, Wiggins and Anderson reported hearing Jefferson ask only about a non-union employee, and then use the word "bitch." It is undisputed that the statement was made only to Wiggins and Anderson, not to the general public. *See, e.g.*, *Modica v. Taylor*, 465 F.3d 174, 181 (5th Cir. 2006) ("Though not dispositive, Modica's choice to inform someone outside [her employer] of her concerns supports her contention that the speech is public."); *Kast v. Greater New Orleans Expressway Comm'n*, 719 F. Supp. 2d 662, 675 (E.D. La. 2010) ("[T]he Fifth Circuit has held that speech made outside the work-setting to reporters or elected officials is of public concern."). Accordingly, as defendants understood it, Jefferson's speech only weakly implicated any matter of public concern, if at all.

The Fifth Circuit has recognized that the *Pickering* balancing test "is a sliding scale or spectrum upon which 'public concern' is weighed against disruption." *Garza v. Escobar*, 972 F.3d 721, 729 (5th Cir. 2020) (citation omitted). "The more central a matter of public concern the speech at issue, the stronger the employer's showing of

---

[27] Moreover, as the Court noted in its prior order, where speech is unrelated to a matter of public concern, courts decline to "impute to such speech a public character merely because the employee is also a union officer." *Shara v. Me.-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 88 (2d Cir. 2022).

14

counter-balancing governmental interest must be." *Jordan v. Ector Cnty.*, 516 F.3d 290, 299 (5th Cir. 2008) (quotation and citation omitted).

Because Jefferson's speech, even by her own account, at most touched only lightly on a matter of public concern, the government's efficiency interest need not be great in order to prevail. And defendants' side of the *Pickering* scale is not weighty. Wiggins stated in his deposition that Jefferson's statement "affected the order of management," but did not otherwise impair RTA's operations[28] Defendants have not indicated that her statement caused any other disruptions. Balancing these two weak interests, the Court concludes that defendants' interests prevail.

Relevant considerations in *Pickering* balancing are the time, place and manner of the employee's activity, whether the employee's activity can be characterized as hostile or insubordinate, and whether the statement impairs discipline by superiors. *Grogan*, 617 F. App'x at 292. As defendants understood it, Jefferson used profanity against a member of RTA management, which is fairly characterized as a hostile statement with the potential to impair discipline. As to the time and place of Jefferson's conduct, it is undisputed that the interaction took place on RTA property, in the executive offices.[29]

The Court does not intend to suggest that the use of profanity, alone, dictates resolution of the *Pickering* test in the employer's favor. *See Morris v. Crow*, 117 F.3d

---

[28] R. Doc. No. 95-4, at 26:16–:21.
[29] The parties dispute whether Jefferson was "on duty," because she was on a scheduled break at the relevant time.

449, 458 n.4 (11th Cir. 1997) (stating that there is "no per se rule that profane employee speech fails [the *Pickering*] test"). However, on the facts as reasonably understood by the defendants, the Court concludes that Jefferson's interest in speaking does not outweigh the defendants' interests in maintaining a respectful work environment and discipline by superiors. Accordingly, the Court finds that the *Pickering* balancing test weighs in favor of defendants, and defendants are entitled to summary judgment on plaintiffs' speech claims.

### b. Freedom of Association

"The [First Amendment] right of association encompasses the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government [o]n their behalf." *Mote v. Walthall*, 902 F.3d 500, 507 (5th Cir. 2018) (quoting *Hitt v. Connell*, 301 F.3d 240, 249 (5th Cir. 2002) (further citations omitted)). Government employers therefore may not take "action whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to retaliate against those who do." *Id.*

"The First Amendment protects two broad categories of association." *Caleb v. Grier*, 598 F. App'x 227, 237 (5th Cir. 2015) (citation omitted). "The first protects "choices to enter into and maintain certain intimate human relationships" including "marriage, the begetting and bearing of children, child rearing and education, and cohabitation with relatives." *Id.* (citation omitted). "The second category is association for the purposes of engaging in other activities protected by the First Amendment,

such as speech or the free exercise of religion." *Id.* (citation omitted). The associational rights at issue in the instant matter fall into the second category. *See Mote*, 902 F.3d at 507–08.

To succeed on a claim of First Amendment retaliation for freedom of association, a plaintiff must show that (1) she suffered an adverse employment action (2) her interest in associating outweighed the employer's interest in efficiency, and (3) her protected activity was a substantial or motivating factor in the adverse employment action. *Hitt*, 301 F.3d at 246 (citing *Breaux v. City of Garland*, 205 F.3d 150, 156, 157 n. 12 (5th Cir. 2000); *Boddie v. City of Columbus*, 989 F.2d 745, 747 (5th Cir. 1993)). Per Fifth Circuit case law, there is no "matter of public concern" element in a right-to-associate retaliation claim. *Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir. 1991); *accord Burnside v. Kaelin*, 773 F. 3d 624, 626 (5th Cir. 2014).[30]

"When a plaintiff's claims arise under both freedom of speech and freedom of association . . . the freedom of association claims are analyzed under the same *Pickering* balancing test used to determine the success of the freedom of speech claims." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 444 (5th Cir. 1999). A court considering a freedom of association retaliation claim therefore considers

---

[30] The Court notes that some courts have expressed doubt over how to apply these standards in cases with "entangled union speech and associational freedoms." *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Ind. & Serv. Workers Int'l Union v. Anderson*, 17-1242, 2018 WL 3017366, at *11 (W.D. Tex. June 15, 2018), but that courts in the Fifth Circuit have analyzed speech and association claims separately, applying the public concern requirement to the speech claim but not the association claim. *Id.* at *14 (collecting cases).

whether the employee's right to free association outweighs the employer's need "to perform their important public functions." *Collins*, 2015 WL 1468298, at \*4.

The Court has already determined, with regard to the speech claim, that the *Pickering* test weighs in the defendants' favor. For the same reason, plaintiffs' association claims fail.[31] *Anderson*, 184 F.3d at 444. Accordingly,

**IT IS ORDERED** that the defendants' motion[32] for summary judgment is **GRANTED** and plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 2, 2023.

_____
 **LANCE M. AFRICK**
 **UNITED STATES DISTRICT JUDGE**

---

[31] Because the Court determines that plaintiffs' First Amendment claims fail on the merits, it does not consider the parties' arguments regarding qualified immunity and municipal liability.
[32] R. Doc. No. 91.

18